IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE TABLEAU SOFTWARE, INC.
AND SALESFORCE.COM, INC.
DERIVATIVE LITIGATION

No.1:20-cv-00467-SB

---

Timothy Brown, THE BROWN LAW FIRM, P.C., Oyster Bay, New York; Phillip Kim, THE ROSEN LAW FIRM, P.A., New York, New York; Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, Delaware.

*Counsel for Plaintiff Abdullah Ansary.*

Dean McKinley Measley, Jennifer A. Ward, Aubrey Morin, MORRIS, NICHOLS, ARSHT & TUNNEL LLP, Wilmington, Delaware; John C. Dwyer, Patrick E. Gibbs, COOLEY LLP, Palo Alto, California; Christopher B. Durbin, Jeffrey D. Lombard, COOLEY LLP, Seattle, Washington.

*Counsel for Defendants Christian Chabot, Thomas E. Walker, Jr., Patrick Hanrahan, Christopher Stolte, Francois Ajenstat, Forest Baskett, Williams Bosworth, Elliott Jurgensen, Jr., John McAdam, Jay Peir, and Brooke Seawell; and Nominal Defendants Tableau Software, Inc. and Salesforce.com, Inc.*

---

# MEMORANDUM OPINION

February 10, 2021

BIBAS, *Circuit Judge*, sitting by designation.

Abdullah Ansary wants to sue Tableau's former directors and officers. But since Tableau is now a wholly owned subsidiary of Salesforce, the claims he seeks to bring actually belong to Salesforce. So Ansary must first show that he is the right person to bring this double-derivative action, not Salesforce. Tableau's directors and officers (the defendants), and Salesforce and Tableau (the nominal defendants) argue that I should dismiss the complaint because Ansary has not made a demand on Salesforce's board or shown that demand would have been futile. The Tableau directors and officers also say he has failed to state a claim. I will grant the Rule 23.1 motion and dismiss Ansary's complaint.

## I. BACKGROUND

I take the complaint's well-pleaded facts as true. Tableau, a Delaware corporation, sells business-analytics software. Am. Compl. ¶3, D.I. 10. It enjoyed little competition at first. *Id.* ¶4. But by 2015, several other companies had entered the marketplace, and their products were drawing away Tableau's customers. *Id.* ¶¶4, 6, 8.

Tableau was losing its leading edge, but its investors did not know that. Instead, the directors and officers made public statements which led investors to believe that the company's prospects were strong. *Id.* ¶¶5, 8. And while Tableau's stock prices were high, the directors and officers sold many of their shares. *Id.* ¶10, 26, 31, 35, 43, 48, 57, 61. But the show came to an end in 2016, when Tableau issued a press release signaling that its business growth was slowing down. *Id.* ¶6. Within a day, the company's stock price dropped almost 50%. *Id.* ¶7.

Because of the directors' and officers' alleged misconduct, a class of shareholders sued some of them under the federal Securities Exchange Act. Second Amended Complaint, *Scheufele v. Tableau Software, Inc.*, No. 17-cv-05753 (S.D.N.Y. Feb. 2, 2018), D.I. 45. That class action is ongoing in the Southern District of New York.

In 2019, Tableau merged with Salesforce, another Delaware corporation, under a stock-for-stock agreement. Am. Compl. ¶13, 208. Tableau became a wholly owned subsidiary of Salesforce, and its shareholders became Salesforce shareholders. *Id.* ¶¶13, 20. Salesforce agreed to indemnify and hold harmless Tableau's officers and directors for six years. *Id.* ¶212. That agreement covers any acts or omissions that occurred before the merger. *Id.*

Now this lawsuit: Abdullah Ansary was a Tableau shareholder who became a Salesforce shareholder after the merger. *Id.* ¶20. His lawsuit differs from the one in the Southern District of New York in two ways. First, Ansary brings claims against the Tableau directors and officers under Delaware law. He claims that they breached their fiduciary duties and unjustly enriched themselves before Tableau's stock price fell. *Id.* ¶¶246–62. Second, Ansary sued *after* the merger. That means the claims actually belong to Salesforce, the parent corporation of Tableau. *Lambrecht v. O'Neal*, 3 A.3d 277, 282–83 (Del. 2010). Thus, Ansary has brought a double-derivative suit on behalf of Salesforce.

Salesforce and Tableau (the nominal defendants), and the Tableau directors and officers (the true defendants) have moved to dismiss Ansary's complaint under Federal Rule of Civil Procedure 23.1. Mot. to Dismiss, D.I. 12. They say that he has not adequately pleaded

that demand would have been futile. The Tableau directors and officers have also moved separately to dismiss under Rule 12(b)(6) for failure to state a claim. *Id.*

Since Ansary is a New York citizen, this Court has diversity jurisdiction. 28 U.S.C. § 1332(a)(1). Beyond the complaint, I take judicial notice of Salesforce's SEC filings. *See* D.I. 14, Ex. A, Ex. B. These are trustworthy public records. Fed. R. Evid. 201(b)(2); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). So I will consider them in weighing the motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II. THE COMPLAINT FAILS TO PLEAD THAT DEMAND WAS FUTILE

When a shareholder brings a derivative action, his complaint must "state with particularity" his efforts "to obtain the desired action from the directors" and "the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). This goes hand-in-hand with Delaware's demand requirement. A shareholder cannot assert a corporation's claims unless he has already demanded that the directors pursue the claim and they have wrongfully refused, or demand is excused as futile. *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993).

Ansary brings a double-derivative action, which means that he is suing on behalf of Salesforce for the alleged misconduct of the Tableau directors and officers. But he never demanded that Salesforce's board of directors take action. So this lawsuit can proceed only if I excuse the demand. To justify that, Ansary must allege particularized facts that create a reasonable doubt that at least half the Salesforce board could not have "properly exercised its independent and disinterested business judgment in responding to [his] demand." *Id.* at

4

934; *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1046 n.8 (Del. 2004). But he has not pleaded particularized facts. And even if I overlook that defect, the facts he does plead are not enough to challenge the Salesforce board's independence or disinterestedness. So I will not excuse the demand as futile.

## A. The complaint does not plead particularized facts

To show futility, the complaint must put forth a "detailed, fact-intensive, director-by-director analysis." *In re INFOUSA, Inc. Shareholders Litig.*, 953 A.2d 963, 985 (Del. Ch. 2007). But Ansary's complaint does not plead facts "specific to each director" on the Salesforce board. *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007) (emphasis omitted). Instead, it claims that demand is excused because all the Salesforce directors, "acting collectively, caused Salesforce to acquire Tableau at an unfairly low and undervalued price." Am. Compl. ¶225. They were able to get a "discounted price" because they approved the indemnification and hold-harmless clause in the merger agreement. *Id.* at ¶¶226–27. This supposedly proves that the Salesforce board was "engaged in a scheme to protect the [Tableau directors and officers] from liability" for their misconduct, and that the board entered the merger in bad faith. *Id.* at ¶227, 237; Pl.'s Br. in Mot. to Dismiss 9, D.I. 16.

These are just broad allegations. Without more specificity, I cannot find that making a demand would have been futile. But even if I ignore this flaw, the facts that the complaint does allege do not meet the burden of showing that demand would have been futile.

**B. There is no reasonable doubt that Salesforce's board was disinterested**

The complaint's allegations do not create a reasonable doubt that the directors of Salesforce's board could exert disinterested business judgment and impartially consider the merits of the claims. *Rales*, 634 A.2d at 934. A director is considered "interested" in a couple of situations. First, he is interested if he "will receive a personal financial benefit from a transaction that is not equally shared by the stockholders." *Id.* at 936. Ansary does not allege that here for any of the Salesforce directors.

Second, a director is also considered interested if "a corporate decision will have a materially detrimental impact on [him], but not on the corporation and the stockholders"— such as personal liability for any damages from the suit. *Id.* There must be a "substantial likelihood" of personal liability, not just a "mere threat." *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984).

Ansary believes that demand should be excused because the Salesforce board could not evaluate a demand impartially. That is because he thinks that the directors face a substantial likelihood of personal liability for approving the indemnification and hold-harmless clause in the merger agreement. He claims that they did so in "bad faith" because they had "knowledge of the full breadth of the [Tableau directors' and officers'] deception." Am. Compl. ¶237; Pl.'s Br. 9, 13–15. As evidence, he says that the merger's clause is "broader than" the one in Tableau's bylaws and gives the Tableau directors and officers "home-free tickets." Am. Compl. ¶227, 230. All this somehow proves that the Salesforce directors are now personally liable to Salesforce for damages from the suit. *Id.* ¶237; Pl.'s Br. 14.

But Ansary overreads the clause. It does not give Tableau's directors and officers "home-free tickets." Am. Compl. ¶227. As the complaint acknowledges, the clause incorporates "applicable Law." *Id.* ¶212. That includes the Delaware General Corporation Law. So the Tableau directors and officers cannot be indemnified if they are "adjudged to be liable to the corporation." 8 Del. Code. §145; *see also In re Merrill Lynch & Co., Inc., Sec. Derivative & ERISA Litig.*, 773 F. Supp. 2d 330, 342 (S.D.N.Y. 2011). Nor is the clause broader than the one in Tableau's bylaws. The provision in the merger agreement indemnifies "to the fullest extent permitted by … the [Tableau] Governing Documents"—that is, the bylaws. Am. Compl. ¶212 (alteration in original).

Nothing else about the merger clause suggests that the Salesforce board struck an improper deal with Tableau's directors and officers. The clause is routine. Salesforce's board did not create a special agreement for the Tableau directors and officers; indeed, it added a similar provision in its agreement to acquire another company, Mulesoft, Inc. Both indemnify and hold harmless the directors and officers of Tableau and Mulesoft "to the fullest extent permitted by" Delaware law and Salesforce's bylaws. *Compare* D.I. 14, Ex. A at 50 (Section 7.4), *with id.* Ex. B. at A-49 (Section 7.4(a)). Both are effective for six years. These provisions are "standard" and "do not constitute grounds for questioning" the Salesforce board's disinterestedness. *In re Merrill Lynch*, 773 F. Supp. 2d at 342 (discussing a near-identical director-and-officer indemnification and hold-harmless clause).

Based on these facts, I find no "substantial likelihood" that the directors on Salesforce's board are personally liable for acting in bad faith. *Aronson*, 473 A.2d at 815. Ansary's other arguments do not help. Salesforce's settlement of three lawsuits challenging the merger's

consideration does not indicate that its directors are at risk of personal liability. Even if they paid too little for the merger, that does not show that they were trying to help the Tableau directors and officers. And just because the Salesforce board has not yet sued the Tableau directors and officers does not mean that demand would be futile. Ansary must show more than inaction. He has not pleaded enough to question the Salesforce board's disinterestedness.

**C. There is no reasonable doubt that Salesforce's board was independent**

Lastly, the complaint does not create a reasonable doubt that the directors on Salesforce's board could exercise their independent judgment. An independent director's decision rests on the business merits of the suit, not on outside influences. *Aronson*, 473 A.2d at 816. To establish lack of independence, Ansary must show that the Salesforce directors are "beholden" to or under the influence of the Tableau directors and officers. *Id.*

None of the directors on Salesforce's board appears to have had a prior personal or professional relationship with the defendants. *See* Defs.' Br. 4–5. So it is unlikely that the Salesforce directors are "beholden" to or under the influence of the Tableau directors and officers. Ansary has not pleaded any facts to suggest otherwise, nor has he contested this point in his briefing. So I do not find that Salesforce's board would lack independence.

* * * * *

Though Ansary's claims might have some merit, they belong to Salesforce. Since he has not pleaded particularized facts to show that demand should be excused, he cannot bring this double-derivative action. So I will grant the motion to dismiss the complaint under Rule 23.1 without prejudice. I will give Ansary thirty days to amend to cure this

defect. Since I need not reach the merits, I will deny the Tableau directors and officers'
motion to dismiss under Rule 12(b)(6) as moot.